UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>LYNN J. OLSEN, II, MARK G. PETERSON, BLAKE T. BENNETT, JEFFREY J. GORDON, OLSEN AG. INC., POCO, L.L.C., and TRI-CITIES PRODUCE,<br><br>    Defendants. | NO.  CR-11-6001-RHW<br><br>**ORDER ADDRESSING PRETRIAL MOTIONS** |

A pretrial conference was held on September 20, 2011, in Richland, Washington.  Defendants were present and represented by John Adams Moore, Jr., Irwin Schwartz, Mark Vovos, Richard Smith and R. Bruce Johnston.  The Government was represented by Tyler Tornabene and Andrew Biviano.

Defendants are charged with conspiracy (18 U.S.C. § 371); false application (18 U.S.C. § 1014); and mail fraud (18 U.S.C. § 1341), based on events surrounding the obtaining of crop insurance and the receipt of indemnity payments for potatoes grown in the Eastern District of Washington.  Defendants have filed a number of pretrial motions seeking to have the Court dismiss the Indictment. Defendants also seek a Bill of Particulars and to Strike Surplusage from the Indictment.

**1.    Defendants' Motion to Dismiss Counts 1 through 10 of the Indictment**

Defendants move the Court to dismiss Counts 1 through 10 of the

**ORDER ADDRESSING PRETRIAL MOTIONS ~ 1**

Indictment for various reasons.  Defendants' underlying premise is that Counts 2-10 do not state valid offenses under 18 U.S.C. § 1014.  Count 1 is based on the illegality of the conduct charged in Counts 2-10.

In ruling on a pre-trial motion to dismiss an indictment for failure to state an offense, the district court is bound by the four corners of the indictment.  *United States v. Boren*, 278 F.3d 911, 913 (9th Cir. 2002).  On such a motion, the court must accept the truth of the allegations in the indictment in analyzing whether a cognizable offense has been charged.  *Id.*  "The indictment either states an offense or it doesn't.  There is no reason to conduct an evidentiary hearing."  *Id.*  "A motion to dismiss the indictment cannot be used as a device for a summary trial of the evidence . . . The Court should not consider evidence not appearing on the face of the indictment."  *Id.*

In reviewing the sufficiency of the indictment, the court must ask whether it meets the following requirements:

(1)    does it contain the essential elements of the statute?
(2)    is the language clear or is it ambiguous, not readily understood, contradictory or confusing?
(3)    does it adequately advise the defendants of the nature of the crime with which they are charged as they may defend against it?

*United States v. Root*, 366 F.2d 377, 379 (9th Cir. 1966).

The court must read the indictment in its entirety and construe it using "common sense and practicality."  *United States v. Awad*, 551 F.3d 930, 935 (9th Cir. 2009).  If an indictment completely fails to recite an essential element of a charged offense and the insufficiency is properly challenged before trial, the omission is "not a minor or technical flaw subject to harmless error analysis, but a fatal flaw requiring dismissal of the indictment."  *United States v. DuBo* 186 F.3d 1177, 1179 (9th Cir. 1999).

The statute in question is 18 U.S.C. § 1014.  The pertinent parts of the statute are as follows:

> Whoever knowingly makes any false statement or report, or willfully overvalues any land, property or security, for the purpose of

**ORDER ADDRESSING PRETRIAL MOTIONS ~ 2**

influencing in any way the action of the . . . Federal Crop Insurance Corporation or a company the Corporation reinsures . . . *upon any application*, advance, discount, purchase, purchase agreement, repurchase agreement, commitment, loan, or insurance agreement or application for insurance or a guarantee, or any change or extension of any of the same, by renewal, deferment of action or otherwise, or the acceptance, release, or substitution of security therefor, shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.[1] (Emphasis added).

## A.    "**In connection with**"

Rather than track the statutory language, the indictment in Counts 2-10 alleges Defendants "knowingly made a false statement and report and willfully overvalued property for the purpose of influencing the action of the Federal Crop Insurance Corporation . . . *in connection with an application.*" (ECF No. 1). (Emphasis added).  As set forth above, the statute uses the language *upon any application*, rather than *in connection with an application.*  Defendants argue that the phrase "in connection with" is broader than the phrase "upon application" and because of this, the counts should be dismissed.

The "in connection with" language is broader than the statutory language "upon application" but does not require Counts 2-10 to be dismissed.  Because the term "in connection with" is broader than the term "upon an application," the former naturally encompasses the later.  Thus, there are no notice problems.  The language in the indictment encompasses the manner in which the Government maintains Defendants committed the § 1014 violations.

No showing of prejudice has been made because the indictment uses the broader language.  The underlying premise of the argument is that the indictment charges more than is necessary, not that the indictment fails to charge an offense.  Even if it does, this is not fatal to the indictment, as the Supreme Court explained in *United States v. Smith*,  471 U.S. 130, 144 (1985).  In that case, the Supreme

---

[1]The statute was amended in 2008 and the phrase "or insurance agreement or application for insurance or a guarantee" was added.  Pub. L. 110-289, Div. B, Title I § 2129.

**ORDER ADDRESSING PRETRIAL MOTIONS** ~ 3

Court specifically rejected the argument that the Constitution is violated if the allegations unnecessary to an offense that are contained within the indictment are withdrawn or ignored by the court.  *Id.*

The indictment, discovery, and the Government's submissions and proposed jury instructions provide the specific dates and the specific applications upon which the false statements and overvaluations were allegedly made.  The Court can cure the overbroad indictment by instructing the jury using the "upon an application" language, and dismissal of Counts 2-10 is not warranted.

**B.    "Overvaluing Property"**

The indictment alleges that Defendants violated § 1014 using three alternative means–making a false statement, making a false report, and overvaluing land, property or security–to influence the action of the Federal Crop Insurance Corporation.  Under the Government's theory, the property at issue is the crops of potatoes that were going to be grown for any given year as identified on the Annual Farm Report.  Defendants contend that property as used in the statute refers to things of value given or pledged to a lender, not anticipated crops.

The term "property" is not defined in the statute.  However, case law does not limit the statute to lending transactions.  *See Boren*, 278 F.3d at 914.  In *Boren*, the defendant argued that § 1014 is limited to false statements in connection with lending transactions and does not extend to the alleged wrongful conduct of making a false statement to a bank in connection with a request to stop payment of an official bank check.  *Id.*  The Circuit held that the language of § 1014 was "unambiguous and broad" and noted that "nowhere in the language of the statute has Congress stated that the statute applies only to applications seeking credit from one of the covered institutions."  *Id.* (*citing United States v. Wade*, 266 F.3d 574, 579 (6th Cir. 2001).

With respect to the conduct alleged in the indictment, at the time the property, *i.e.* the crops, were valued in the Annual Farm Report, the crops were not

**ORDER ADDRESSING PRETRIAL MOTIONS ~ 4**

fully matured, and possibly were not even planted. This, however, does not prevent the future crops from being "property" as contemplated by the statute. The transaction at issue was crop insurance and such insurance inevitably is acquired and purchased prior to the full harvest of the crops. Likewise, it is not unusual in real estate transactions for a loan to be based on the expected or future value of property once the construction or renovations are complete. The use of the term property necessarily encompasses the future value of the property as set forth in the applications.

### C.    Form FCI-12 and Form FCI-821

Defendants contend that Counts 4, 6, 8, and 9 do not charge that false statements were made on the FCIC prescribed applications and therefore these counts should be dismissed. Defendants assert that the only place where false statements can be made is on the form FCI-12, rather than on form FCI-821 (Annual Farm Report), as alleged by the Government. The record establishes that the term "application" encompasses form FCI-821.

Forms FC1-12 provides in box 13 the following language:

I request insurance coverage for my approved Adjusted Revenue for the insurance year specified on my Annual Farm Report.

(ECF No. 145, Ex. 1)

There is a box to check Yes or No. *Id.* Also, in the box labeled A the following language is present:

I further understand that no insurance will be available for my adjusted gross revenue unless this application and required forms (Annual Farm Report and farm tax forms) are completed and filed prior to the sales closing date for the insurance year.

*Id.*

Clearly, the Annual Farm Report is part of the "application" as defined by the FCIC. Even more telling is the statement contained in the Annual Farm Report found just above the signature line. It states:

I also understand that failure to report completely and

**ORDER ADDRESSING PRETRIAL MOTIONS ~ 5**

1  accurately may result in voidance of my adjusted gross revenue
2  insurance contract and may result in criminal or false claims penalties
   (18 U.S.C. § 1006 and 1014, 7 U.S.C. 1506, 31 U.S.C. § 3728 and
3  3730).
   (ECF No. 145, Exs. 2, 3, 4, 5)

4      As such, dismissal of Counts 4, 6, 8, and 9 is not warranted.

5      **D.    False Insurance Claims**

6      Defendants contend that false claims to obtain indemnity under insurance

7  policies are not proscribed by § 1014 because there is no language in § 1014 that

8  extends the reach of § 1014 to insurance claims.  It is true that § 1014 is explicit in

9  terms of the type of conduct that is covered by § 1014:  upon any application,

10  advance, discount, purchase, purchase agreement, repurchase agreement,

11  commitment, loan, or insurance agreement or application for insurance or a

12  guarantee. The term "claim" or "insurance claim" is not listed in § 1014.

13      Even so, case law dictates that "application" encompasses the filing of an

14  insurance claim.  *See Boren*, 278 F.3d at 917.  In *Boren*, the Ninth Circuit took a

15  broad view of the term "application," suggesting that the term encompasses

16  conduct in which a person applies or requests a listed institution to undertake some

17  action.  It held that a stop payment request on a bank check was an "application "

18  to the bank to dishonor the check when it was presented.  *Id.*  Specifically, it noted

19  that "[a] customer's request that a bank stop payment of a check drawn by the bank

20  is an 'application' which the bank has a right to accept or reject."  *Id.*  As such, a

21  false statement made to influence a bank's action on such a request falls within the

22  purview of § 1014.  *Id.*  Applying the reasoning of *Boren* to this case, a false claim

23  for insurance is made to influence an insurance companies' action on such a claim

24  and falls within the purview of § 1014.

25  **2.    Defendants' Motions to Dismiss the Indictment Based on Estoppel**

26      **Theories**

27      Defendants ask the Court to dismiss the indictment because the Government

28  should be estoped from pursuing criminal charges against them given the FCIA's

**ORDER ADDRESSING PRETRIAL MOTIONS ~ 6**

participation in the handling of litigation involving the Defendants, the resolution
of the litigation, and obtaining of the releases that were signed by Defendants and
FCIA.  Defendants rely on the following theories in making this request: res
judicata, collateral estoppel, estoppel by entrapment, and equitable estoppel. (ECF
Nos. 147, 211, 213, 215, 217, and 219).

In the majority of these motions, Defendants move for an evidentiary
hearing.  In order to be entitled to a hearing on a pretrial motion, Defendants must
demonstrate "with sufficient definiteness, clarity, and specificity" to permit the
court to conclude that "contested issues of fact exist."  *United States v. Howell*, 231
F.3d 615, 620 (9th Cir. 2000).  Defendants seek to flush out the involvement of the
RMA in securing the mutual releases.

An evidentiary hearing is not warranted for the basic reason that the RMA
does not have the requisite authority to enter into any agreement that would
subsequently preclude criminal proceedings.  Even if an evidentiary hearing would
uncover that an agent from RMA procured or even signed the mutual releases, the
United States would not be precluded from pursuing criminal charges against these
Defendants.  As such, an evidentiary hearing is not necessary.

Although the Court was unable to locate published Ninth Circuit precedent
on point, the unpublished case of *United States v. Angelica* is instructive.  *See* 1988
WL 114151 (9th Cir. Oct. 20, 1988).  In that case, the defendant entered into a
stipulated settlement with the Federal Trade Commission that settled a civil action
brought by the FTC.  *Id*. at *1.  The defendant was subsequently indicted.  *Id.*  On
appeal, the defendant argued that the FTC action was similar in nature to the later
criminal prosecution and therefore the criminal case was precluded.  The Circuit
concluded there was no identity of parties, as" [t]he FTC and the Justice
Department are different in origin, function, and jurisdiction."  *Id.*  It also noted
that the two proceedings involved different causes of actions.  *Id.*  The civil
complaint sought injunctive relief and redress for injured customers in the form of

**ORDER ADDRESSING PRETRIAL MOTIONS ~ 7**

restitution and the subsequent proceeding was criminal in nature, with a higher burden of proof. *Id.* It noted that different facts were essential to the maintenance of each proceeding. *Id.*

Case law in other Circuits is more clear. In those cases, the analysis starts with statutory law granting exclusive authority to conduct and control litigation involving the United States to the Attorney General. *See* 28 U.S.C. §§ 516, 519. Defendants have not pointed to any legal basis that indicates that RMA had the authority to resolve any potential criminal exposure of Defendants, absent approval of the Attorney General. Even if an agent from the RMA actively procured the mutual releases, it would not be binding on the United States unless the agent was acting within the limits of his or her actual authority. *See Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384 (1947); *United States v. Walcott*, 972 F.2d 323 (11th Cir. 1992); *United States v. Killough*, 848 F.2d 1523 (11th Cir. 1988); *Dresser Indust., Inc. v. United States*, 596 F.2d 1231 (5th Cir. 1979). Notably, in *Dresser*, the plaintiff attempted to enforce a purported contract with the SEC that would "bind the Department of Justice not to investigate Dresser, not to issue Grand Jury subpoenas, and not to assess civil or criminal penalties." 596 F.2d at 1236. The Fifth Circuit held that such a contract would not be enforceable because neither the SEC nor any of its agents possessed the authority to make such agreements. *Id.* Additionally, in *Walcott,* the Eleventh Circuit held that even if the government handled the case and dealt with the defendant in a "shabby" fashion, a settlement agreement entered into by an agent of the SBA did not bind the Justice Department without specific Justice Department approval. *Walcott*, 972 F.2d at 325.

In *Merrill*, the Supreme Court cautioned against anyone entering into an arrangement with the Government. Such a person takes

> the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority. The scope of this authority may be explicitly defined by Congress or be limited by delegated legislation, properly exercised through the rule-making power. And this is so even though, as here, the agent himself may have been unaware of the limitations upon his authority.

**ORDER ADDRESSING PRETRIAL MOTIONS ~ 8**

332 U.S. at 384.

Based on this long-standing precedent, any attempt to hold the United States (and Department of Justice) accountable by mutual releases under an equitable theory is clearly not supported by the law.

Moreover, even if Defendants were to prove estoppel based on the conduct of RMA, the appropriate remedy would not be to dismiss the Indictment. *See United States v. Fields*, 592 F.2d 638, 648 (2nd Cir. 1978). In that case, SEC employees actively negotiated a settlement with the defendants but withheld the fact that the case had been referred to the Department of Justice. *Id.* at 643-44. The Circuit concluded this was improper, given that the defendants approached the SEC with the stated objective of avoiding a criminal reference which was never contradicted by the SEC employees. *Id.* at 647. Even so, the Circuit concluded that it clearly was an abuse of discretion for the district court to dismiss the indictment. *Id.* at 648 ("Thus, even assuming arguendo that the SEC was engaged in enforcement of Federal Criminal laws when it negotiated the Civil consent decree a proposition about which we have considerable doubt it clearly was an abuse of discretion for the district court to employ such a severe sanction against the government on the facts of this case.").

The underlying basis for Defendants' estoppel theories is the conduct of RMA. Any conduct on the part of RMA, including conduct which could conceivably support an estoppel theory against RMA itself, could not limit the authority of the Department of Justice to bring criminal charges. Therefore, all of Defendants' estoppel theories fail, as a matter of law. [2]

---

[2]The Court notes that if it were wrong in its analysis and the signing of releases by FCIA at the instance of RMA could resolve the criminal charges, it would have ordered an evidentiary hearing. The documents proffered to the Court raised sufficient questions about the involvement of the RMA in the resolution of

**ORDER ADDRESSING PRETRIAL MOTIONS ~ 9**

**3.**   **Motion to Dismiss for Pre-Indictment Delay (5th Amendment)**

Defendants assert the indictment should be dismissed because of pre-indictment delay.

Fed. R. Cr. P. 48(b) provides;

> The court may dismiss an indictment, information, or complaint if unnecessary delay occurs in:
>
> (1) presenting a charge to a grand jury;
> (2) filing an information against a defendant; or
> (3) bringing a defendant to trial.

"The Fifth Amendment guarantees that defendants will not be denied due process as a result of excessive pre-indictment delay." *United States v. Corona-Verbera*, 509 F.3d 1105 (9th Cir. 2007) (*quoting United States v. Sherlock*, 962 F.2d 1349, 1353 (9th Cir. 1989). Generally, the statute of limitations is the usual safeguard against excessive delay between commission of the crime and indictment. *Id.* In some circumstances, however, "the Due Process Clause requires dismissal of an indictment brought within the [statute of] limitations period." *Id.* Here, the applicable statute of limitations for violations of, and conspiracy to violate, 18 U.S.C. § 1014 is ten years. 18 U.S.C. § 3293. The statute of limitations for Mail Fraud and Conspiracy to Commit Mail Fraud is five years. 18 U.S.C. § 3282. The counts alleged fall within the statute of limitations.

In order to successfully argue that their due process rights were violated because of pre-indictment delay, Defendants must satisfy both prongs of a two-part test. First, Defendants must prove "actual, non-speculative prejudice from the delay." *Id.* Second, when balancing the length of the delay against the reasons for the delay, Defendants must show that the delay "offends those 'fundamental conceptions of justice which lie at the base of our civil and political institutions.'" *Id.* (citation omitted). If Defendants cannot meet the first prong, the Court does not consider the second. *Id.* In establishing actual prejudice, Defendants face a heavy

the claims to warrant a hearing to determine the extent of such involvement.

**ORDER ADDRESSING PRETRIAL MOTIONS** ~ 10

1 burden.  *Id.*  "Generalized assertions of the loss of memory, witnesses, or evidence

2 are insufficient to establish prejudice.  *United States v. Manning*, 56 F.3d 1188,

3 1194 (9th Cir. 1995); *Sherlock*, 962 F.2d at 1354 (mere potential for memory lapses

4 insufficient).

5       Here, Defendants have not provided evidence of "actual, non-speculative

6 prejudice from the delay."  Because Defendants are unable to show any actual

7 prejudice, the Court cannot dismiss the indictment based on pre-indictment delay.

8 **4.    Defendants' Motion for an Order Declaring 18 U.S.C. § 1014**

9 **Unconstitutional for Vagueness**

10       Defendants argue that 18 U.S.C. § 1014 is impermissibly vague under the

11 Due Process Clause of the Fifth Amendment.  Defendants bring both a facial

12 challenge and an as-applied challenge to § 1014.  Defendants maintain that even if

13 the factual assertions in the indictment are accepted as true, the statute nonetheless

14 fails the vagueness test.  They also argue that § 1014 provides no standard for

15 determining what a grower, merchant, or farmer has to do in dealing with a

16 distributor or purchaser in order to avoid liability under the statute.  According to

17 Defendants, the statute lacks criteria for defining a threshold standard of conduct

18 concerning false statements, and specifically, "upon any application" in order to

19 avoid criminal liability.

20       "Vague statutes are invalidated for three reasons: (1) to avoid punishing

21 people for behavior that they could not have known was illegal; (2) to avoid

22 subjective enforcement of laws based on 'arbitrary and discriminatory

23 enforcement' by government officers; and (3) to avoid any chilling effect on the

24 exercise of First Amendment freedoms."  *Foti v. City of Menlo Park*, 146 F.3d 629,

25 638 (9th Cir.1998).

26       Any facial challenge to § 1014 is not availing.  A party "who engages in

27 some conduct that is clearly proscribed cannot complain of the vagueness of the

28 law as applied to the conduct of others."  *Hoffman Estates v. Flipside*, 455 U.S.

**ORDER ADDRESSING PRETRIAL MOTIONS ~ 11**

489, 495 (1981). As a result, a party can facially challenge a statute only if "the statute is impermissibly vague in all of its applications." *Id.* at 497. Defendants have not argued that § 1014 impinges on or chills any constitutional protected conduct, substantial or otherwise, nor have they argued that the statute falls into the disfavored category of identification statutes similar to vagrancy statutes, which have been found to be unconstitutionally vague. *See Schwartzmiller v. Gardner*, 752 F.2d. 1341, 1348 (9th Cir. 1984). Moreover, federal courts have previously applied the statute to specific conduct, so it is not so vague as to specify "no standard of conduct at all" in any application. As such, Defendants cannot sustain a facial challenge to the statute. *See id.* (instructing courts to exercise judicial restraint when evaluating whether a statute is vague on its face where the statute in question does not impinge on protected conduct, does not fall in the disfavored category, and has been previously applied to specific conduct).

Defendants also argue that § 1014 is unconstitutionally vague as applied to them in this case. A statute is unconstitutionally vague as applied if it fails to put a defendant on notice that his conduct was criminal. *United States v. Kilbride*, 584 F.3d 1240, 1257 (9th Cir. 2009) (*citing United States v. Purdy*, 264 F.3d 809, 811 (9th Cir. 2001)). When the statute involves criminal sanctions, "the requirement for clarity is enhanced." *Id.*

Defendants' as-applied vagueness challenge fails even applying a heightened requirement of clarity. As applied in this case, section 1014 proscribes: (1) the making of a false statement, or report, or overvaluing of any property, to the FCIC or a company it reinsures upon an application or other listed instrument; (2) knowing that such statement or report was false, or performing the overvaluation willfully; and (3) with the purpose of influencing in any way the action of the FCIC or a company it reinsures. The statute provides three *mens rea* requirements—"knowingly," "willfully," and "for the purpose of influencing"— that mitigate against any potential vagueness and notice concerns. *See Skilling v.*

**ORDER ADDRESSING PRETRIAL MOTIONS** ~ 12

*United States*, __ U.S. __, 130 S.Ct. 2896, 2928 (2010).  Moreover, the multiple instruments listed in § 1014 provide fair notice to a reasonable person of the standard of conduct that is required.[3]  Finally, the statute does not encourage discriminatory enforcement.

**5.      Defendants' Motion for Bill of Particulars**

Defendants move for a Bill of Particulars to clarify the nature of the charges, their scope, and the specific facts.  The Court finds the detailed indictment, the grand jury testimony, and the discovery provided by the Government meet the requirements of Fed. R. Cr. P. 7(c).  *See United States v. Long*, 706 F.2d 1044, 1054 (9th Cir. 1983) ("In determining if a bill of particulars should be ordered in a specific case, a court should consider whether the defendant has been advised adequately of the charges through the indictment and all other disclosures made by the government.").  The indictment and disclosures provide sufficient information for Defendants to prepare for trial, avoid prejudicial surprise at trial, and plead their acquittal or conviction as a bar to another prosecution for the same offense. *See United States v. Ayers*, 924 F.2d 1468, 1483 (9th Cir. 1981).  Defendants' Motion for Bill of Particulars is denied.

**6.      Defendants' Motion to Exclude Expert Witnesses for Failure to Comply with Rule 16, and in the Alternative, to Compel Immediate Disclosure, and for an Evidentiary, Pre-Trial *Daubert* Hearing**

Defendants ask the Court to preclude the following Government experts from testifying at the criminal trial: Dale Lathim, Dr. Joseph Guenthner, and Bruce Huffaker.  Defendants also ask the Court to conduct a pre-trial *Daubert* hearing to

---

[3]Specifically, § 1014 lists the following instruments that, when false statements are knowingly made upon them, fall within the prohibited conduct:

any application, advance, discount, purchase, purchase agreement, repurchase agreement, commitment, loan, or insurance agreement or application for insurance or a guarantee, or any change or extension of any of the same, by renewal, deferment of action or otherwise, or the acceptance, release, or substitution of security therefor.

**ORDER ADDRESSING PRETRIAL MOTIONS ~ 13**

determine the admissibility of the testimony.  The Government provided letter
reports from the experts to comply with Rule 16.

The Court finds that the letters provided by the Government meet the
requirements of Fed. R. Cr. P. 16(a)(1)(G).  A *Daubert* hearing is not warranted.
Any foundational objections can be made at trial.

**7.    Defendants' Motion to Strike Surplusage from the Indictment Pursuant
to Rules of Criminal Procedure 7(d)**

Defendants ask the Court to strike alleged surplusage from the indictment.

A defendant is entitled to have language stricken from the indictment only if
it is both irrelevant and prejudicial.  *United States v. Laurienti*, 611 F.3d 530, 456-
47 (9th Cir. 2010) (internal quotation marks omitted).  "The purpose of a motion to
strike under Fed.R.Crim.P. 7(d) is to protect a defendant against prejudicial or
inflammatory allegations that are neither relevant nor material to the charges."  *Id.*
(internal quotation marks omitted).  Allegations in the indictment that are not
necessary to establish a violation of a statute are surplusage and may be
disregarded if the remaining allegations are sufficient to charge a crime.  *United
States v. Fernandez*, 388 F.3d 1199, 1219 (9th Cir. 2004).

The indictment sets forth the Government's contentions of the scheme to
defraud and does not need to have language stricken to avoid prejudice.

**8.    Defendants' Rule 12 Motion for: (1) an Order to Dismiss for Violations
of the Sixth Amendment Right to Counsel, Citizens Protection Act of
1998, Rules of Professional Conduct; and (2) an Evidentiary Hearing**

Defendants Blake Bennett and Tri-Cities Produce move to dismiss the
indictment for violations of the Sixth Amendment and Rules of Professional
Conduct.  At issue are interviews conducted by federal agents of persons
associated with Tri-Cities Produce, Inc., after the indictment was issued; interviews
conducted by a federal agent of persons who were at a meeting with Tri-Cities'
then-counsel Diehl Rettig; and the fact that Defendant Bennett's attorney worked

**ORDER ADDRESSING PRETRIAL MOTIONS ~ 14**

at the same firm as the attorney representing FCIA in the arbitration and other legal proceedings.

A corporation has a right to counsel that attaches after the corporation has been indicted. *United States v. Rad-O-Lite of Philadelphia, Inc.*, 612 F.2d 740, 743 (3rd Cir. 1979); *see also United States v. Unimex, Inc.*, 991 F.2d 546, 550 (9th Cir. 1993) (recognizing that a corporation has a Sixth Amendment right to be represented by counsel).

Dismissal of an indictment with prejudice necessarily implicates separation of powers principles. *United States v. Isgro*, 974 F.2d 1091, 1097 (9th Cir. 1992). "In deciding whether to dismiss an indictment, a court must not only determine whether a defendant has suffered actual prejudice, it must also limit its consideration to those events that actually bear upon *the grand jury's decision to indict*." *Id.* (emphasis in original). Post-indictment prosecutorial misconduct is not a factor in determining whether a defendant was prejudiced. *Id.* A district court may properly dismiss an indictment only if the prosecutorial misconduct was flagrant, and caused substantial prejudice to the defendant. *United States v. Jacobs*, 855 F.2d 652, 655 (9th Cir. 1988). In cases involving prosecutorial misconduct which is neither flagrant nor prejudicial, a district judge can still sanction the misconduct, but the sanction chosen must be proportionate to the misconduct. *Id.* (citations omitted). Moreover, "a claim of outrageous government conduct premised upon deliberate intrusion into the attorney-client relationship will be cognizable where the defendant can point to actual and substantial prejudice." *United States v. Stringer*, 535 F.3d 929, 941 (9th Cir. 2008).

Defendants have not demonstrated that dismissal of the indictment would be appropriate. With respect to the alleged conflict of interest on the part of Defendant Bennett's counsel, the extent of the conflict is not apparent in the reports of Agent Tillotson. Defendant Bennett has not demonstrated that he was actually prejudiced by the interviews conducted by Agent Tillotson, or that these

**ORDER ADDRESSING PRETRIAL MOTIONS** ~ 15

reports would be admissible.  Therefore, it is not necessary to impose any remedy related to this evidence, such as dismissal or  suppression.

Local Rule 83.3 holds attorneys accountable for violations of the Washington Rules of Professional Conduct.  Rule 4.2 of the Washington Rules of Professional Conduct states:

> In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or by a court order.

Commentary 7 to WRPC 4.2 states:

> In the case of a represented organization, this Rule prohibits communications with a constituent of the organization who supervises, directs or regularly consults with the organization's lawyer concerning the matter or has authority to obligate the organization with respect to the matter. Consent of the organization's lawyer is not required for communication with a former constituent. If a constituent of the organization is represented in the matter by his or her own counsel, the consent by that counsel to a communication will be sufficient for purposes of this Rule. In communicating with a current or former constituent of an organization, a lawyer must not use methods of obtaining evidence that violate the legal rights of the organization.

Commentary 10 states:

> Whether and how lawyers may communicate with employees of an adverse party is governed by *Wright v. Group Health Hospital*, 103 Wn.2d 192, 691 P.2d 564 (1984).

In *Wright*, the Washington court held that the attorney-client privilege does not in itself bar plaintiffs' attorney from interviewing defendant corporation's employees and noted that a corporate employee who is a "client" under the attorney-client privilege is not necessarily a "party" for purposes of Rule 4.2.  103 Wash. 2d 192, 195, 202 (1984).  The *Wright* court interpreted the term "party" as used in Rule 4.2 in the context of litigation involving corporations as only those employees who have the legal authority to "bind" the corporation in the legal evidentiary sense.  *Id*. at 199.  Put another way, employees should be considered "parties" under Rule 4.2 if, under applicable Washington law, they have managing authority sufficient to give them the right to speak for, and bind, the corporation.

**ORDER ADDRESSING PRETRIAL MOTIONS ~ 16**

*Id.*

Defendant Tri-City Produce has not met its burden of showing that Ms. Sowers has legal authority to bind the corporation in a legal evidentiary sense. The statements made by Ms. Sowers would not be admissible as statements against the interest of the corporation and would not be admissible against any individual Defendant. Neither dismissal or preclusion of her testimony is warranted at this point in the proceedings. If evidence of the conversations is offered at trial, the Court can consider a remedy in that context.

Accordingly, **IT IS HEREBY ORDERED:**

1. Defendants' Motion to Dismiss Counts 1 Through 10 of the Indictment (ECF No. 145) is **DENIED**.

2. Defendants' Motion to Dismiss Counts 1 and 11 of the Indictment and to Strike Overt Acts (ECF No. 147) is **DENIED**.

3. Defendants' Motion for: (1) an Order to Dismiss for Pre-Indictment Delay (Fifth Amendment and Rule 48(b) Fed. R. Cr. P.); and (2) an Evidentiary Hearing (ECF No. 149) is **DENIED**.

4. Defendants' Motion for an Order Declaring 18 U.S.C. § 1014 Unconstitutional for Vagueness (ECF No. 152) is **DENIED**.

5. Defendants' Motion to Exclude Expert Witnesses for Failure to Comply with Rule 16, and in the Alternative, to Compel Immediate Disclosure, and for an Evidentiary Hearing (ECF No. 154) is **DENIED**.

6. Defendants' Motion to Strike Surplusage from the Indictment Pursuant to Rules of Criminal Procedure 7(d) (ECF No. 156) is **DENIED**.

7. Defendants' Motion for a Bill of Particulars (ECF No. 158) is **DENIED**.

8. Defendants' Motion to Dismiss Counts 10 and 11 and Overt Acts 5(h)-(j) Based Upon Prior Dismissal with Prejudice (ECF No. 211) is **DENIED**.

9. Defendants' Motion to Dismiss Count 6 and Strike Overt Acts 5(e)-(g)

**ORDER ADDRESSING PRETRIAL MOTIONS ~ 17**

and 6 (ECF No. 213) is **DENIED**.

10.    Defendants' Motion to Dismiss Count 10 and Overt Acts 5(f)(g)(h) and (k) (ECF No. 215) is **DENIED**.

11.    Defendants' Motion to Dismiss Counts 6, 7, 9, 10, and Overt Acts 5(e)-(k), and 6 Based Upon Equitable Estoppel (ECF No. 217) is **DENIED**.

12.    Defendants' Motion To Dismiss Counts 6-11 and Overt Acts 5(e-k), 6, and "purported" (ECF No. 219) is **DENIED**.

13.    Defendants' Rule 12 Motion for: (1) an Order to Dismiss for Violations of the Sixth Amendment Right To Counsel, Citizens Protection Act of 1998, Rules of Professional Conduct, and (2) an Evidentiary Hearing (ECF No. 161) is **DENIED**.

14.    Defendants' Motion to Continue Trial (ECF No. 278) is **GRANTED**.

15.    The Government's  Motion for Extension of Time to File Charts and Summaries (ECF No. 285) is **GRANTED**.

16.    Defendants' Motion to Expedite (ECF No. 286) is **GRANTED**.

17.    The deadline for filing the Government's charts and summaries is **December 20, 2011.**  The deadline for filing Defendants' charts and summaries is **January 10, 2012.**

18.    The current trial date of October 31, 2011, is **stricken**.  Trial is **reset** for **February 21,  2012,** in Richland, Washington, at 9:00 a.m.  Counsel and defendants shall appear in court at 8:30 a.m. the first day of trial. Jury selection shall begin at 9:00 a.m.

///
///
///
///
///

**ORDER ADDRESSING PRETRIAL MOTIONS ~ 18**

19.   Pursuant to 18 U.S.C. § 3161(h)(7)(A), the time between October 31, 2011, the current trial date, until February 21, 2012, the new trial date, is **DECLARED EXCLUDABLE** for purposes of computing time under the Speedy Trial Act.  The Court finds that the ends of justice served by such a continuance outweigh the interests of the public and Defendant in a speedy trial.

**IT IS SO ORDERED.**  The District Court Executive is directed to enter this order and to provide copies to counsel.

**DATED** this 11th day of October, 2011.


*s/Robert H. Whaley*
ROBERT H. WHALEY
United States District Judge


Q:\aCRIMINAL\2011\11-6001\orderfinal.wpd

**ORDER ADDRESSING PRETRIAL MOTIONS** ~ 19