```
 1                IN THE UNITED STATES DISTRICT COURT

 2              IN AND FOR THE EASTERN DISTRICT OF WASHINGTON

 3   UNITED STATES OF AMERICA,    )        NO. CR 11-6001-RHW-1
                                  )           CR 11-6001-RHW-2
 4              Plaintiff,        )           CR 11-6001-RHW-3
                                  )           CR 11-6001-RHW-4
 5     VS.                        )           CR 11-6001-RHW-5
                                  )           CR 11-6001-RHW-6
 6   LYNN J. OLSEN, II, et al.,   )           CR-11-6001-RHW-7
                                  )
 7              Defendants.       )        Richland, Washington
     _____)        Tuesday, September 20, 2011
 8
```

**TRANSCRIPT OF ARGUMENT BY ANDREW BIVIANO**

BEFORE THE HONORABLE ROBERT H. WHALEY

UNITED STATES DISTRICT COURT JUDGE

REPORTED BY:        Stephanie Smithson, CRR, RMR

Proceedings recorded by mechanical stenography; transcript produced by computer-aided transcription.

```
 1  APPEARANCES:

 2
    For Plaintiff:          Michael C. Ormsby
 3                          United States Attorney
                            920 W. Riverside, Suite 300
 4                          Spokane, Washington 99210
                      BY:   ANDREW SEAN BIVIANO
 5                          Assistant United States Attorney
                            TYLER HOWARD LOUIS TORNABENE
 6                          Assistant United States Attorney

 7
    For Defendants:         JOHN ADAMS MOORE, JR., ESQ.
 8                          217 North Second Street
                            Yakima, Washington 98901
 9
                            IRWIN H. SCHWARTZ, ESQ.
10                          710 Cherry Street
                            Seattle, Washington 98104
11
                            MARK EDMUND VOVOS, ESQ.
12                          West 1309 Dean, Suite 100
                            Spokane, Washington 99201
13
                            RICHARD A. SMITH, ESQ.
14                          314 North Second Street
                            Yakima, Washington 98901
15
                            R. BRUCE JOHNSTON, ESQ.
16                          200 Winslow Way West, Suite 300
                            Bainbridge Island, Washington 98110
17

18

19

20

21

22

23

24

25
```

STEPHANIE SMITHSON, CRR, RMR

```
 1    TUESDAY, SEPTEMBER 20, 2011                         11:42 A.M.
 2                          P R O C E E D I N G S
 3                               ---o0o---
 4              MR. BIVIANO:  Thank you, your Honor.  Andrew Biviano
 5    on behalf of the United States.
 6              To keep things as efficient as possible, I think I
 7    will not respond to everything that was said by Mr. Moore and
 8    Mr. Smith regarding the factual basis for their argument of
 9    privity, and we'll stick to the Court's request that we address
10    the hypothetical question of whether even if RMA had signed the
11    releases whether they would have any preclusive effect?
12              THE COURT:  That's a good idea, because at least --
13    this is not a ruling, but on the issue of -- if -- if RMA had
14    signed the releases and there's no liability, it wouldn't bar
15    the case, then even if I found they control the litigation, it
16    wouldn't make any difference.  So that's...
17              MR. BIVIANO:  Precisely.
18              THE COURT:  They may well establish they might be
19    entitled to an evidentiary hearing on whether the litigation, in
20    fact, was, the settlements and like, were prompted by the
21    government.
22              MR. BIVIANO:  Sure.
23              THE COURT:  And that the litigation strategy was to
24    preserve this other criminal issue outside it, you know, which
25    ultimately came up in this indictment by not including it in the
```

reasons for rejecting the claims, and so it would be sort of a deliberate control by the government to keep that out of the civil case. I mean, you can infer that from the facts that they kept that out of the civil cases for governmental reasons.

**MR. BIVIANO:** And not to confuse things any more, but I think an issue that has gone by the wayside that also could easily resolve the matter is the fact that Judge Van Sickle already had an entire lawsuit brought on the question of whether these arbitrations are binding towards the United States. The defendants completely ignored that issue in their reply brief. It was the first argument the U.S. raised in its response on an exactly identical factual claim. The U.S. actually stepped into the shoes of a defunct insurance company and was relitigating the question that had already been litigated in arbitration. And Judge Van Sickle found as a matter of law that there's no jurisdiction over the United States in those arbitrations. So any release that comes out of those arbitrations, any issues aside in those arbitrations, as a matter of law have already been found to not be binding on the United States.

I think that's another way to not have to address these factual issues, because there's a legal precedent already out there with a preclusive effect, which the defendants have essentially ignored, I assume, because they don't have a response.

**THE COURT:** Are you saying that Judge Van Sickle had

1  the same e-mails that I have and the same materials that suggest
2  that the government may have been doing this to preserve its
3  criminal case and he found, nonetheless, if they directed the
4  arbitration they weren't in privity?
5          **MR. BIVIANO:**  I think he did more than that, your
6  Honor.  I think he had actual privity of we're going to now be
7  for all intents and purposes the insurance company that you once
8  litigated against.
9          **THE COURT:**  That's different.  That's an issue -- I
10 mean, I understand.  I've read his order, and I didn't disagree
11 with it, but that's a different issue than what they're arguing.
12 It seems to me it is.
13         **MR. BIVIANO:**  In that case, I will address the
14 question your Honor raised, which is, even if the U.S. -- even
15 if RMA had signed on these releases --
16         **THE COURT:**  Or the U.S. Attorney had.
17         **MR. BIVIANO:**  Those are different questions, because
18 what the defendants have argued is that RMA controlled the
19 litigation, not the U.S. Attorney.
20         **THE COURT:**  What difference would it make?
21         **MR. BIVIANO:**  It's a big difference.  RMA does not
22 have the authority to bring criminal charges.  RMA did not have
23 the authority to release people from criminal charges.  Under 28
24 USC 547, only the Department of Justice and U.S. Attorney's
25 Office has authority to do this.  So what the defendants are

1  arguing is that there should be an implied release, because it
2  wasn't mentioned in the release, it was implied, and that there
3  should be a release of all criminal liability.  First, we have
4  to have the hypothetical of RMA being a party, but then we still
5  can't get around the fact that RMA couldn't have done that even
6  if it wanted to.
7         **THE COURT:**  What you're saying is if the release had
8  said, And we hereby release the defendants from any criminal
9  liability, and that it was in the release that nonetheless it
10 would not be legally effective.
11        **MR. BIVIANO:**  Absolutely.
12        **THE COURT:**  Can I analyze it under that lens, I mean,
13 if I denied the evidentiary hearing because even if the RMA had
14 said that that it wouldn't bind the government?
15        **MR. BIVIANO:**  Absolutely.  RMA has no authority to
16 release anybody from criminal liability, cannot bring charges.
17 OIG is the only entity that can actually investigate criminal
18 charges.  RMA deals with the contractual language of the cases.
19 It raised suspicions about this might be a criminal matter.
20 There's an investigation still going on, but it has no authority
21 to say we forgive you or we absolve you of criminal liability.
22 That's a legal matter that we cannot get around.
23        The other factor that has not been really addressed
24 is that parallel proceedings are not unusual.  They happen all
25 the time.  I raise cases in the brief.

1        The Hickey case, an SEC civil claim brought by the
2   SEC, the exact same agency that later was on the central -- one
3   of the prosecution, and then later on a criminal charge.
4   Nothing wrong with that.
5        The Bhatia case I cited talks about how cooperation
6   is not control; that we do not want to have judicial rulings
7   that chill -- having a chilling effect on cooperation between
8   the government in civil matters if they're related.
9        Furthermore, these would impede criminal
10  investigations, because, essentially, what that does is if we're
11  saying the RMA was aware of these charges or these suspicions,
12  there's some concerns about the contracts, what the
13  plaintiffs -- sorry -- what the defendants are suggesting is
14  that they had to bring them right there.  There was an
15  arbitration brought by the defendants -- at that point they were
16  plaintiffs -- to get payments on these claims that were denied.
17  They bring a civil contract dispute under state law and are now
18  saying that because of our timing when we bring our civil
19  arbitration dispute will determine when the government has to
20  bring criminal charges or at least argue its criminal case to us
21  before the investigation was finished, before the U.S. Attorney
22  had a chance to do its work, that's when it has to happened.
23  That can't.  That's not practical, and that doesn't work in
24  actuality.
25       So that's the bottom line, is that the government

1  cannot be forced and should not be forced to bring criminal
2  charges based on defendants' schedule.  It needs to be done at a
3  proper time.  That's why all these civil proceedings can occur
4  at the same time, why in this very case, the case that's
5  referenced several times involving AUSA Mr. Tangvald and Judge
6  Van Sickle.  There was a proceeding about one of the indemnity
7  claims at issue here today.  It went through just fine.  They
8  resolved it to a completion without affecting any of the
9  criminal prosecution to come.
10         And I think there's still much being discussed about
11 the factual question about how much RMA knew, because there
12 isn't anything to say on the legal question, which makes that
13 all irrelevant.  The reality is that RMA, of course, is going to
14 be alerted to what companies are doing.  FCIC as the reinsurer
15 has a reinsurer's agreement.  So, of course, they're going to be
16 aware of what's going on.  They're going to be consulted.
17 That's in the reinsurance agreement, as well.  Does not mean
18 they control it.  They don't have a right to control it.  They
19 don't have jurisdiction.  There's no jurisdiction over RMA in
20 the arbitration proceedings.  It's just not happening.
21         I think a good reason why the Court can infer why the
22 subject matter was limited to the issues it was limited to is
23 because that's all the arbitrator had jurisdiction over.  It's a
24 creature of contract, and this contract for insurance goes to
25 the arbitrator.  Arbitrator can't decide whether there's a false

1  statement under 1014 on the indemnity claim or whether the AGR
2  was falsely reported.  That's outside of their purview, and the
3  investigation wasn't done yet.  So, of course, they have to
4  answer the threshold question of whether there's even a
5  processing contract or whether these are qualified persons under
6  the language of the contract, but that's as far as it could have
7  gone.  And so because the ultimate question in any estoppel
8  issue is whether the issues that are in dispute now were, could
9  have and should have been brought in an earlier case, it's
10 revolved.  That is resolved by matter of law, because there is
11 no way those issues could have been brought in the civil
12 arbitration matters.
13         Not as essential, but I think it was mentioned by
14 Mr. Moore, that the issues raised in the arbitrations were the
15 gravamen of the indictment, that the processing -- the contracts
16 regarding the specific gravity were what was going to be decided
17 in this case, and that's not accurate.  I understand that
18 there's some issues in common, but they're not the gravamen of
19 the criminal case.
20         In fact, the United States could still prevail on
21 this criminal prosecution even not prevailing on those issues.
22 The case here is whether there's a false statement on the
23 applications.  It's not whether -- the specific gravity of the
24 specific thing.  It's that was there an intent -- when they said
25 that we are owed this money, was there intentional,

1  knowledgeable false statement that they knew that they were, in
2  fact, not owed that money.
3           It could be proven in several different ways.  If
4  there was actually not truly a loss, because there was actually
5  money flowing back and forth.  Perhaps, the bruising wasn't a
6  high enough level, but the specific gravity was outside of the
7  reasonable expectations.  There's all sorts of different pieces
8  of evidence that will go towards proving knowledge, intent, make
9  things more or less likely.  But that's not what this case is
10 about, and they need to -- the defendants have not yet quite
11 grasped that reality of our case.  And that also controls this
12 question of whether there's an estoppel, because these are
13 different separate issues.
14          Last thing on the issue of estoppel, there seems to
15 be a belief on behalf of the defense counsel that the United
16 States is obligated to disclose its pending, unfinished criminal
17 investigations whenever the plaintiffs or defendants want them
18 to.  There's almost a nefarious plot they keep describing about
19 how RMA knew these things and wasn't dealing in fairness and
20 aboveboard, because it wasn't telling the defendants at the time
21 that they were investigating them for these contracts.  Never
22 once do they cite any authority that says they have to do that.
23 And why would they do that?  That would completely hinder, if
24 not destroy, the investigation effectiveness if they were being
25 forced to reveal that simply because a civil arbitration claim

1  was filed for payment under a contract.
2       That's all I have to say on that issue.
3       The next thing that was raised was the in furtherance
4  language.  Two points were raised.  One was that it was
5  precluded.  Same arguments as before for estoppel.  Again,
6  that's in no way been precluded.  There was no finding in any
7  earlier case that these were not in furtherance of the scheme.
8       And then, also, that there's -- a factual sequence is
9  not causal as a matter of law.  I think he cited to Palsgraf,
10 Mr. Johnston.  I think it's interesting when someone argues that
11 this is a matter of law, and they have no legal citation to
12 support that argument.  Not a single case has been cited that
13 says --
14       **THE COURT:**  Palsgraf.
15       **MR. BIVIANO:**  Palsgraf.  Other than Palsgraf about a
16 civil tort case, nothing that ever would say a criminal
17 prosecution on mail fraud can be precluded because the fraud was
18 suspected by the victim.  It's a new theory which I can describe
19 as the you should have known better theory that puts the onus on
20 the victim of the fraud to have prevented them from completing
21 their fraud, and if they don't do that, then the fraudster gets
22 away.  That's basically the theory.  Even though the statute
23 clearly puts the focus on the defendants' behavior, on the
24 intent when the mailing was made, was it intended to further a
25 separate fraudulent scheme, they proposed it instead be put on

1  the mailer of the check, that they suspected there was a
2  fraudulent scheme, therefore, the more furtherance.
3              That's not consistent with the plain language of the
4  statute.  It defeats the entire intent of what the mail fraud
5  statute is which is to encompass any fraudulent scheme which
6  also incorporates the mailings in it.  And I don't see how it's
7  possible that as a matter of law it could be determined that it
8  was not in the furtherance of a scheme if the scheme is proven
9  that there is a fraudulent scheme here.  I can't see how any
10 reasonable juror could conclude that the ultimate end of this
11 scheme, which is the receipt of a check on this claim for
12 insurance, cannot be in furtherance of the scheme.  I think
13 that -- actually not -- it's not a jury issue, because no
14 reasonable juror could find if this were proven then the check
15 was not in furtherance of it.
16             There's one last issue that I will address before I
17 turn it over to Mr. Tornabene to address the other issues that
18 he briefed, and this one actually was not raised in oral
19 argument.  So I apologize for broadening the scope.  I want to
20 correct something that was said in the briefing.  That was on
21 the brief from Mr. Schwartz about the upon an application
22 argument.  The reason why I raise it up is because two things.
23             One, I want to correct that in my brief.  I made a
24 statement that every one of the documents were signed.
25 Mr. Schwartz correctly pointed out that one of the documents was

1  not signed, and I apologize for that misstatement.  It was in
2  error.
3         Number two is that Mr. Schwartz's reply, I think,
4  misstates, not intentionally, but perhaps didn't fully
5  understand the position the United States took in its response
6  and seems to think that our position is that it has to be signed
7  to be an application.  That's not what we're -- what I said or
8  what I intended to say.  The actual language of Sorenson
9  means -- reads that, "While the definition of agency is
10 relevant, the ultimate purpose of 1014 is to prohibit false
11 statements which influence the action of an agency on an
12 application."
13        And the distinction it made in that case when it
14 dismissed that count is the statement that was made was not able
15 to influence, was not able to trigger, any action on the part of
16 the agency, because on the agency's rules, they don't do
17 anything with unsigned forms.  That's different than this case.
18 That's not -- so the distinction is not the same in this case.
19        All of the charged documents in the indictment did
20 something to trigger action.  They either initiated the
21 coverage.  They triggered the adjustor to come out and start to
22 investigate the claim.  Even the unsigned document does that.
23 They're a statement to the adjustor which influences how the
24 adjustor will treat the claim.  Telling the adjustor this was a
25 contract loss or a heat loss is different than saying we lost

money because we intentionally formed a bad contract. And there are statements that were actually made to usurp what the final indemnity due was. In all those cases, it certainly fits with Ninth Circuit and what other circuits have described as applications.

Defendants have basically tried to limit this from saying any application with a lower case A to the application with a capital A where the court's -- the statute's limited to what the officially entitled document application is. That's not consistent with any interpretation from any court that it's limited to only one document. It's limited to what -- anything someone does to apply for something. If that applying triggers action, that's an application that's prohibited by the statute.

So unless the Court has any further questions on any of the issues.

**THE COURT:** I don't.

**MR. BIVIANO:** I'll turn it over to Mr. Tornabene.

(Proceedings were concluded at 11:58 a.m.)

--o0o--

**CERTIFICATE OF REPORTER**

I, STEPHANIE SMITHSON, Official Reporter for the United States Court, Eastern District of Washington, hereby certify that the foregoing proceedings in CR-11-6001-RHW-1 through 7, U.S. v. Lynn Olsen, et al. were reported by me, a certified shorthand reporter, and were thereafter transcribed under my direction into typewriting; that the foregoing is a full, complete and true record of said proceedings as bound by me at the time of filing.

The validity of the reporter's certification of said transcript may be void upon disassembly and/or removal from the court file.

s/ Stephanie Smithson
_____
Stephanie Smithson, CRR, RMR

Monday, October 31, 2011